MARGARET A. MOESER, Chief
MARY BUTLER, Chief, International Unit
DANIEL H. CLAMAN, Principal Deputy Chief, International Unit
JOSHUA L. SOHN, Trial Attorney. International Unit
BARBARA Y. LEVY, Trial Attorney, International Unit
Money Laundering and Asset Forfeiture Section (MLARS)
Criminal Division
United States Department of Justice
  1400 New York Avenue, N.W. 10th Floor
  Washington, D.C. 20530
  Telephone:  (202) 514-1263
  Email:  Joshua.Sohn@usdoj.gov


E. MARTIN ESTRADA
United States Attorney
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
  312 North Spring Street, 14th Floor
  Los Angeles, California 90012
  Telephone: (213) 894-2727
  Facsimile: (213) 894-0142
  Email:  Jonathan.Galatzan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>THE SUM OF $20,000,000 IN FUNDS AND SECURITIES TRACEABLE DIRECTLY OR INDIRECTLY TO UBS ACCOUNT NO. XX-XX715-WB AND FIDELITY INVESTMENT ACCOUNT NO. XXXX XX7922, INCLUDING 8,268.80 SHARES OF VANGUARD INDEX FDS VANGUARD GROWTH ETF FORMERLY VANGUARD INDEX TR VIPERS (TICKER: VUG), | No.<br><br>**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***<br><br>[18 U.S.C. § 981(a)(1)(A) and (C)]<br><br>[F.B.I.] |

12,539.22 SHARES OF VANGUARD
INDEX FDS VANGUARD VALUE
ETF FORMERLY VANGUARD
INDEX TR (TICKER: VTV), AND
17,860 SHARES OF AKRE FOCUS
IND INSTL (TICKER: AKRIX),

                    Defendant Assets.

The United States of America brings this complaint against the above-captioned assets and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action *in rem* to forfeit assets involved in and traceable to an international conspiracy to, among other things, launder money misappropriated from 1Malaysia Development Berhad ("1MDB"), a strategic investment and development company wholly owned by the government of Malaysia. The United States seeks forfeiture of property pursuant to 18 U.S.C. § 981(a)(1)(C), on the ground that it was derived from violations of U.S. law, and pursuant to 18 U.S.C. § 981(a)(1)(A) on the ground that it is property traceable to property involved in one or more money laundering offenses in violation of 18 U.S.C. §§ 1956 and/or 1957.

2.      1MDB was ostensibly created to pursue investment and development projects for the economic benefit of Malaysia and its people, primarily relying on the issuance of various debt securities to fund these projects. However, between approximately 2009 and at least 2014, multiple individuals, including public officials and their associates and various corporations, conspired to fraudulently divert billions of dollars from 1MDB through various means, including by defrauding 1MDB's Board of Directors and financial institutions, and sending or causing to be sent foreign wire communications in furtherance of the scheme, and thereafter, to launder the proceeds of that criminal conduct, including in and through U.S. financial institutions. The funds

diverted from 1MDB were used for, among other things, the personal use and benefit of the co-conspirators and their relatives and associates, including to purchase luxury real estate in the United States and overseas, acquire stock in United States companies, pay gambling expenses at Las Vegas casinos, acquire more than $200 million in artwork, purchase lavish gifts for family members and associates, invest in a major New York real estate development project, and fund the production of major Hollywood films and to cover up and conceal the scheme. 1MDB maintained no interest in these assets and saw no returns on these investments.

3.     The criminal conduct alleged herein occurred in at least four principal phases:

4.     The "Good Star" Phase:  The fraudulent diversion of funds from 1MDB began in approximately September 2009, soon after 1MDB's creation. Between 2009 and 2011, under the pretense of investing in a joint venture between 1MDB and PetroSaudi, certain senior officials of 1MDB and senior officials of PetroSaudi and others arranged for the fraudulent transfer of more than $1 billion from 1MDB to a Swiss bank account held in the name of Good Star Limited ("Good Star Account"). Officials at 1MDB caused this diversion of funds by, among other things, providing false information to banks about the ownership of the Good Star Account. Contrary to representations made by 1MDB officials, the Good Star Account was beneficially owned not by PetroSaudi or the joint venture, but by LOW Taek Jho, a/k/a Jho Low ("LOW"), a Malaysian national who had no formal position with 1MDB but who was involved in its creation and exercised significant control over its dealings. LOW laundered more than $400 million of the funds misappropriated from 1MDB through the Good Star Account into the United States, after which these funds were used for the personal use and benefit of LOW and his associates. LOW and 1MDB officials tried to cover up this diversion of funds by converting 1MDB's interest in the joint venture into opaque securities and then causing those securities to be fraudulently overvalued.

5.    The "Aabar-BVI" Phase:  In 2012, 1MDB officials and others misappropriated and fraudulently diverted a substantial portion of the proceeds that 1MDB raised through two separate bond offerings arranged and underwritten by Goldman Sachs International ("Goldman"). These bond offerings were internally known as "Project Magnolia" and "Project Maximus." The bonds were guaranteed by both 1MDB and the International Petroleum Investment Company ("IPIC"), an investment fund wholly-owned by the government of Abu Dhabi, in the United Arab Emirates ("U.A.E."). Beginning almost immediately after 1MDB received the proceeds of each of these two bond issues, 1MDB officials caused a substantial portion of the proceeds – approximately $1.367 billion, a sum equivalent to more than forty percent of the total net proceeds raised – to be wire transferred to a Swiss bank account belonging to a British Virgin Islands entity called Aabar Investments PJS Limited ("Aabar-BVI").

6.    Aabar-BVI was created and named to give the impression that it was associated with Aabar Investments PJS ("Aabar"), a subsidiary of IPIC incorporated in Abu Dhabi. In reality, Aabar-BVI has no genuine affiliation with Aabar or IPIC, and the Swiss bank account belonging to Aabar-BVI ("Aabar-BVI Swiss Account") was used to siphon off proceeds of the 2012 bond sales for the personal benefit of officials at IPIC, Aabar, and 1MDB and their associates. Funds diverted through the Aabar-BVI Swiss Account were transferred to, among other places, a Singapore bank account (the "Blackstone Account") controlled by TAN Kim Loong, a/k/a Eric Tan ("TAN"), an associate of LOW. Those funds were thereafter distributed for the personal benefit of various individuals, including officials at 1MDB, IPIC, or Aabar, rather than for the benefit of 1MDB, IPIC, or Aabar.

7.    A high-ranking executive of the actual Aabar, Mohamed Al-Husseiny ("HUSSEINY"), was instrumental in creating and maintaining the shell BVI entity known as Aabar-BVI and facilitating the diversion of $1.367 billion to Aabar-BVI. For his role in the conspiracy, HUSSEINY received a significant portion of the diverted funds.

8.    The "Tanore" Phase:  In 2013, several individuals, including 1MDB officials, diverted more than $1.26 billion out of a total of $3 billion in principal that 1MDB raised through a third bond offering arranged by Goldman in March 2013. This bond offering was internally known as "Project Catalyze." The proceeds of this bond offering were to be used by 1MDB to fund a joint venture with Aabar known as the Abu Dhabi Malaysia Investment Company ("ADMIC"). However, beginning days after the bond sale, a significant portion of the proceeds was instead diverted to a bank account in Singapore held by Tanore Finance Corporation ("Tanore Account"), for which TAN was the recorded beneficial owner. Bond proceeds transferred into the Tanore Account were used for the personal benefit of LOW and his associates, including officials at 1MDB, rather than for the benefit of 1MDB or ADMIC.

9.    The "Options Buyback" Phase:  In 2014, an additional roughly $850 million in 1MDB funds was misappropriated under the guise of paying Aabar to relinquish certain options it had been given in consideration of IPIC's guarantee of the 2012 bonds. 1MDB borrowed a total of $1.225 billion from a syndicate of banks led by Deutsche Bank in Singapore to fund these payments to Aabar. In fact, however, 1MDB and Aabar officials diverted more than $850 million to Aabar-BVI and another similar entity incorporated in the Seychelles ("Aabar-Seychelles") that appeared to be, but was not, affiliated with IPIC and Aabar. From there, the funds were used, among other things, to purchase a luxury yacht for LOW's personal benefit. A portion of the diverted loan proceeds was also used in an elaborate, Ponzi-like scheme to create the false appearance that 1MDB's earlier investment in the PetroSaudi joint venture had been profitable. The funds were predominantly diverted to and through an account controlled by LOW called the Brazen Sky account.

10.    The proceeds of each of these four phases of criminal conduct were laundered through a complex series of transactions, including through bank accounts in Singapore, Switzerland, Luxembourg, and the United States. Use of the U.S. financial

system was an essential feature of both the fraudulent diversion of 1MDB funds and of the subsequent movement of ill-gotten proceeds around the world.

11.    The DEFENDANT ASSETS are securities and funds up to the amount of $20,000,000 traceable directly or indirectly to a business venture that was created and maintained with funds fraudulently obtained from 1MDB. As a result, the DEFENDANT ASSETS are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), because they are  property traceable to property involved in one or more money laundering transactions in violation of 18 U.S.C. §§ 1956 and/or 1957, and 18 U.S.C. § 981(a)(1)(C) because they are property constituting or derived from proceeds traceable directly or indirectly to one or more violations of U.S. law defined as a specified unlawful activity in 18 U.S.C. §§ 1956(c)(7).

12.    The DEFENDANT ASSETS are the sum of $20,000,000 in funds and securities traceable directly or indirectly to funds deposited in UBS Account No. XX-XX715-WB ("UBS Account") and Fidelity Investment Account No. XXXX-XX7922 ("Fidelity Investment Account"), including:

- 8,268.80 shares of VANGUARD INDEX FDS VANGUARD GROWTH ETF FORMERLY VANGUARD INDEX TR VIPERS (Ticker: VUG);
- 12,539.22 shares VANGUARD INDEX FDS VANGUARD VALUE ETF FORMERLY VANGUARD INDEX TR (Ticker: VTV); and
- 17,860 AKRE FOCUS IND INSTL (Ticker: AKRIX)

(collectively, the "Defendant Securities").

13.    The Defendant Securities are currently held in the Fidelity Investment Account and have an approximate current value of $6.6 million.  The remaining balance of the Defendant Assets are funds constituting the difference between the sum of

1  $20,000,000 less the net proceeds of the liquidation of the Defendant Securities.[1]

2                    **JURISDICTION AND VENUE**

3      14.    This is a civil forfeiture action brought pursuant to 18 U.S.C. § 981(a)(1)(A)

4  and (C).

5      15.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345

6  and 1355.

7      16.    Venue lies in this district pursuant to 28 U.S.C. §§ 1355(b)(1)(A-B) because

8  acts and omissions giving rise to the forfeiture took place in this District.

9

10      **THE DEFENDANT ASSETS ARE TRACEABLE DIRECTLY AND**
        **INDIRECTLY TO THE FOREGOING CONDUCT**

11

12      17.    In or about November 2012, a shell company owned by HUSSEINY called

13  MB Consulting entered into a consulting contract with a company owned by

14  INDIVIDUAL 1. Pursuant to that contract, MB Consulting paid $20 million to

15  INDIVIDUAL 1's company between December 2012 and April 2013. While this $20

16  million nominally came from MB Consulting, MB Consulting was a mere pass-through

17  for the money. In reality (and unbeknownst to INDIVIDUAL 1), the first $10 million was

18  illicit proceeds of the Project Maximus bond offering discussed above. Also unbeknownst

19  to INDIVIDUAL 1, the second $10 million was illicit proceeds of the Project Catalyze

20  bond offering discussed above.

21      18.    In or about September 2013, another company controlled by INDIVIDUAL

22  1 entered into a joint venture agreement with 1MDB to develop an infrastructure project

23  in Malaysia; that agreement included development rights for additional projects. Initial

24  work on the infrastructure project commenced in 2014. In October 2014, 1MDB proposed

25  to buy out INDIVIDUAL 1's company's interest in the joint venture.  1MDB eventually

26  bought out the joint venture interest of INDIVIDUAL 1's company for $69 million,

27

28  _____

[1] The liquidation of the Defendant Securities is set forth in a Stipulation and Request for Entry of Consent to Forfeiture to be filed contemporaneously with the filing of this Complaint.

structured as a $19 million initial payment and a $50 million balance payment. Unbeknownst to INDIVIDUAL 1, the $19 million payment and $50 million payment were both funded with proceeds of the Options Buyback scheme discussed above.

19.    INDIVIDUAL 1 used these streams of money—all of which, unbeknownst to INDIVIDUAL 1, represented criminal proceeds of the 1MDB misappropriation scheme—to deposit in and/or invest in securities and to purchase and/or improve certain real property in the United States using funds deposited in various accounts at financial institutions in the United States including the Fidelity Investments Account and the UBS Account.

20.    The DEFENDANT ASSETS, funds and securities purchased with funds in the amount of $20,000,000, are traceable directly or indirectly to 1) the funds received and deposited and/or invested with the proceeds of the 1MDB misappropriation scheme as alleged above, and 2) the proceeds of the sale of real property purchased and/or improved with the proceeds of the 1MDB misappropriation scheme as alleged above.

## FIRST CLAIM FOR RELIEF
### (18 U.S.C. § 981(a)(1)(C))

21.    Paragraphs 1 through 20 above are incorporated by reference as if fully set forth herein.

22.    The DEFENDANT ASSETS are property that constitutes, and is derived from, proceeds traceable directly and indirectly to one or more violations of: (i) a foreign offense involving the misappropriation of public funds by or for the benefit of a public official (18 U.S.C. § 1956(c)(7)(B)(iv)); (ii) wire fraud (18 U.S.C. § 1343); and (iii) international transportation or receipt of stolen or fraudulently obtained property (18 U.S.C. § 2314) and receipt of stolen money (18 U.S.C. § 2315), each of which is a specified unlawful activity under 18 U.S.C. §§ 1956(c)(7)(A), 1956(c)(7)(B)(iv) and 1956(c)(7)(D), and a conspiracy to commit such offenses.

23.    The DEFENDANT ASSETS are therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF
### (18 U.S.C. § 981(a)(1)(A))

24.    Paragraphs 1 through 20 above are incorporated by reference as if fully set forth herein.

25.    The DEFENDANT ASSETS are traceable to property involved in one or more transactions or attempted transactions in violation of section 18 U.S.C. § 1957 and a conspiracy to commit such offenses in violation of section 18 U.S.C. § 1956(h). Specifically, the DEFENDANT ASSETS are traceable directly or indirectly to property involved in one or more monetary transactions, attempted transactions, and a conspiracy to conduct or attempt to conduct such transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activities, that is: (i) a foreign offense involving the misappropriation of public funds by or for the benefit of a public official (18 U.S.C. § 1956(c)(7)(B)(iv)); (ii) wire fraud (18 U.S.C. § 1343); and (iii) international transportation or receipt of stolen or fraudulently obtained property (18 U.S.C. § 2314) and receipt of stolen money (18 U.S.C. § 2315).

26.    The DEFENDANT ASSETS are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## THIRD CLAIM FOR RELIEF
### (18 U.S.C. § 981(a)(1)(A))

27.    Paragraphs 1 through 20 above are incorporated by reference as if fully set forth herein.

28.    The DEFENDANT ASSETS are traceable to property involved in one or more transactions, or attempted transactions in violation of section 18 U.S.C. § 1956(a)(1)(B)(i) and a conspiracy to commit such offenses in violation of section 18 U.S.C. § 1956(h). Specifically, the DEFENDANT ASSET is traceable directly or indirectly to property involved in one or more financial transactions, attempted transactions, and a conspiracy to conduct or attempt to conduct such transactions

involving the proceeds of specified unlawful activity, that is: (i) a foreign offense involving the misappropriation of public funds by or for the benefit of a public official (18 U.S.C. § 1956(c)(7)(B)(iv)); (ii) wire fraud (18 U.S.C. § 1343); and (iii) international transportation or receipt of stolen or fraudulently obtained property (18 U.S.C. § 2314) and receipt of stolen money (18 U.S.C. § 2315), and were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of the specified unlawful activities in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

29. The DEFENDANT ASSETS are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, plaintiff United States of America prays that:

(a)     due process issue to enforce the forfeiture of the DEFENDANT ASSETS;

(b)     due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)     this Court decree forfeiture of the DEFENDANT ASSETS to the United States of America for disposition according to law; and

(d)     for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

1    Dated: January 17, 2025                 Respectfully submitted,

2                                            MARGARET A. MOESER
3                                            Chief, Money Laundering and
                                             Asset Recovery Section
4                                            Criminal Division
                                             U.S. Department of Justice
5

6                                            ___/s/ *Barbara Y. Levy*_____
7                                            JOSHUA L. SOHN
                                             BARBARA Y. LEVY
8                                            Trial Attorneys, MLARS
9
                                             JONATHAN GALATZAN
10                                           Assistant United States Attorney
11
                                             Attorneys for Plaintiff
12                                           UNITED STATES OF AMERICA
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **VERIFICATION**

I, Ryan Collins, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are official files and records of the United States, publicly available files and historical information, information supplied to me by other law enforcement officers, experts, and other witnesses, as well as my investigation in this case, together with others, as a Special Agent of the Federal Bureau of Investigation.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of January, 2025, at New York, NY.


Ryan Collins
Special Agent
Federal Bureau of Investigation